[No. 14154. Department Two. October 13, 1917.]

MAIDA T. CARSON, *by her Guardian etc., Appellant,* v.
M. A. WILEY *et al., Respondents.*[1]

EXECUTION—SALE—RIGHT TO PURCHASE—MORTGAGOR. A sale on execution to other creditors of the mortgagor's interest in the premises terminates an agency whereby the mortgagee agreed to collect rents, pay taxes and apply the balance on the mortgage; and in paying the judgment and obtaining title thereunder, the mortgagee was not acting as agent of the mortgagor.

TRUSTS—CONSTRUCTIVE TRUST—PURCHASE BY MORTGAGOR. In such case, there was no constructive trust in favor of the mortgagor, since there was no breach of duty or fraud, either actual or constructive.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered January 6, 1917, upon findings in favor of the defendants, dismissing an action for equitable relief, tried to the court. Affirmed.

[1]Reported in 167 Pac. 1111.

*D. R. Glasgow* and *A. O. Colburn*, for appellant.

*F. A. McMaster*, for respondents.

Mount, J.—This action was brought by the appellant, through a guardian, seeking a decree that the appellant is the owner of a half section of land in Douglas county, Washington, and for an accounting for the rents of said land. Upon a trial, the lower court dismissed the action, and this appeal followed.

The facts are that: In April of 1906, Mrs. Carson bought of Mr. Wiley the land in dispute, for a consideration of $8,640. She paid $700 down and agreed to pay the balance in various sums on or before April 20, 1910. On January 30, 1907, Mrs. Carson had paid upon the purchase price of the land $3,263.55. At that time the original contract was changed so that Mr. Wiley deeded the land to the appellant, who assumed a first mortgage of $2,500 thereon, and gave to Mr. Wiley a second mortgage of $2,876.45, being the balance of the purchase price. Thereafter Mrs. Carson neglected the land and failed to pay the taxes or meet the interest upon the mortgages against the land. Mr. Wiley thereupon prevailed upon Mrs. Carson to lease the property, saying that he would endeavor to find a renter. A renter was found, who agreed to take a lease for the premises for the years 1908 to 1911, inclusive. A lease was entered into and Mrs. Carson assigned the lease to Mr. Wiley, who agreed to receive the rents and, out of the same, to pay the taxes and interest on the mortgages and apply the balance upon his mortgage. Mr. Wiley did this until the year 1910. In that year, a firm composed of Messrs. Munter and Lovejoy obtained a judgment against Mrs. Carson for $249.80. Soon thereafter, a Mr. McMaster obtained a judgment against her for $797.05. On May 14th, Munter and Lovejoy, under their judgment, levied upon Mrs. Carson's interest in the property in controversy. Her interest was sold under that judgment, and the property was bid in by one Clapp for $278.62.

Thereafter, in May, 1910, Mrs. Carson deeded her interest in the land in question to a Mrs. Borrell. Mrs. Borrell notified Mr. Wiley that she had purchased the land from Mrs. Carson, whereupon Mr. Wiley and Mrs. Borrell endeavored to sell the land so as to pay the judgments and mortgages. They were unable to do so. Mr. Wiley thereafter, in 1911, in order to protect his second mortgage, purchased the judgment of Mr. McMaster, which judgment was a lien upon the real estate, and thereafter purchased the sheriff's certificate of sale from Mr. Clapp. After the time had expired for redemption, Mr. Wiley obtained a sheriff's deed to the premises. He thereupon canceled the notes and mortgage of Mrs. Carson and claimed the property as his own.

It is contended by the appellant that Mr. Wiley was Mrs. Carson's agent, and that, when he purchased the property, he purchased it as her agent. This claim is based entirely upon the fact that, at the time Mrs. Carson assigned the lease to Mr. Wiley, he agreed to receive the rent, pay therefrom the taxes and interest upon the mortgages, and apply the balance upon his debt. He was undoubtedly an agent for that purpose; but, while the lease was in force, Mrs. Carson suffered judgments to go against her. She permitted her interest in the property to be sold under one of these judgments, and, after that, she transferred her interest by deed to Mrs. Borrell. We think it is too plain for argument that, when Mrs. Carson's interest in the land was sold under the judgment, whatever agency there was between Mrs. Carson and Mr. Wiley thereupon ceased.

It is also plain from the evidence that Mr. Wiley took an assignment of the lease which Mrs. Carson had entered into for the purpose of preserving his mortgage. He took it for no other purpose. The evidence does not show that Mr. Wiley at any time agreed to care for the premises or to pay any judgments or liens which Mrs. Carson might permit to accumulate against her title. After she had allowed her interest in the property to be sold under an execution, Mr.

Wiley was in no manner bound to take care of that interest for Mrs. Carson. What he did thereafter was to protect his own interest merely. He paid the judgments for the purpose of protecting his mortgage. He did not do that, however, until after he had attempted to have the judgment debtors pay his mortgage and take the land. When he was unable to accomplish this, and when he and Mrs. Borrell were unable to have the land sold to pay the debts, Mr. Wiley himself advanced the money to pay the judgment liens, and the sheriff's deed was thereupon issued to him. We are satisfied, upon these facts, which are not disputed in the record, that Mr. Wiley was not an agent for Mrs. Carson in paying these judgment liens or in obtaining title to the property. He was simply endeavoring to protect his own interest. There is no showing in the record to the effect that he did not at that time pay an adequate price for the property. At § 711, Jones on Mortgages (7th ed.), it is said:

"The general rule therefore is that the mortgagee may acquire the equity of redemption either directly from the owner, or at a sale by his assignee in bankruptcy, or by his creditor upon execution. But the consideration for such a sale must be adequate.

"An indebtedness existing between the parties has been held to be a valid consideration.

"Where the land is sold on execution under a judgment constituting an elder lien to that of the mortgage, the mortgagee may acquire such paramount title by purchase. He may acquire any title adverse to the mortgagor, whatever it may be, and set it up against his claim to redeem."

At § 713, the same author says:

"There is a limitation of this rule whenever the mortgagee has either expressly assumed any duty to protect the mortgaged estate in any particular, or such a duty impliedly arises from the relation of the parties."

The only duty that Mr. Wiley assumed was to collect the rents and apply them upon the taxes and interest upon the mortgages, and to apply the balance upon the mortgages

during the time the title was in Mrs. Carson. When she parted with her title, either voluntarily or by permitting the sale to judgment creditors, so· that the property passed out of her control, it is plain that Mr. Wiley owed· no further duty to her, under the rule as stated. When her title was destroyed by the sale upon execution to other creditors, against whom Mr. Wiley had not undertaken to protect her, his obligations to Mrs. Carson then ceased.

Appellant further argues that, because Mr. Wiley allowed the land to be sold under the execution and purchased from the purchaser at the execution sale, a constructive trust was created. But there can be no constructive trust where there is no breach of duty, or fraud, either actual or implied. Section 1044, Pomeroy's Equity Jurisprudence (3d ed.). The record in this case, we think, clearly shows that there was no fraud, either actual or constructive, on the part of Mr. Wiley.

It is argued that Mrs. Carson was incompetent to transact business, and that equity, therefore, should protect her. This was the principal issue upon the trial. There was evidence to the effect that Mrs. Carson was incompetent. There was much evidence to the effect that she was an intelligent business woman, but that she had been extravagant in the use of money and in her real estate deals. The trial court, after seeing the witnesses and hearing all the evidence, found, as a matter of fact, that, at the time of the transactions here in question,

". . . the said Maida T. Carson was competent to transact business and that she could understand, with reasonable clearness, what she was doing during all of that time and that she was able to fully comprehend the effects and the terms of the contracts, deeds and mortgages that had passed between her and the defendants, and the court finds that she was competent to contract during all of the said periods of time."

There was an abundance of evidence to sustain this finding of the trial court, and we think the preponderance justified the finding.

We find no error in the record, and the judgment is therefore affirmed.

Ellis, C. J., Holcomb, Parker, and Fullerton, JJ., concur.